Elizabeth S. Edgecomb, Respondent, *v.* Sarah E. Buckhout, as Administratrix, etc., of Eckford Webb, Deceased, Appellant

*Master and servant — damages for a breach of contract — right to discharge a servant, when a question of law — when marriage justifies a discharge.*

Upon the trial of an action brought to recover the value of personal services agreed to be rendered, as damages for the alleged breach of such contract by the employer, the question respecting the right of the employer to discharge the employee is a question of law to be determined by the trial court, and the submission of the question to the jury for its determination upon the facts is erroneous if the testimony respecting the discharge is uncontradicted.

It is a legal principle that for habitual negligence or unwarranted absence, or for any such conduct in fact as prevents a mutual agreement of employment from being carried out to the reasonable satisfaction of the employer, the person employed may be dismissed.

It is a general rule that when a person fails to perform his part of a contract or disables or disqualifies himself from performing it, the other party may treat the contract as rescinded.

Marriage is not only a contract but an institution, and it not only creates rights and imposes obligations but it confers a status.

The marriage of a woman who has contracted to render personal services to a man until his death, for a specified compensation, brings about such a change in her as to disqualify her from the performance of her contract with her employer, who is thereby justified in considering her proposed marriage as a rescission of the contract on her part, and may discharge her for that cause.

Cullen, J., dissenting.

Appeal by the defendant, Sarah E. Buckhout, as administratrix, etc., of Eckford Webb, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 21st day of May, 1894, upon the verdict

·of a jury rendered after a trial at the Kings County Circuit, and also from an order entered in said clerk's office on the 4th day of June, 1894, denying the defendant's motion for a new trial.

*Louis O. Van Doren,* for the appellant.

*Daniel B. Thompson,* for the respondent..

DYKMAN, J. :

This is an action brought against the administratrix with the will annexed of Eckford Webb, deceased, to recover the value of per-.sonal services of the plaintiff to him.

The plaintiff entered the service of the decedent in August, 1880, under an agreement which fixed her compensation at sixty dollars a month. It was paid down to February 1, 1881, when a new agreement in relation to her compensation was made, by which the plain-. tiff was to render the same services for the decedent until his death, for which she should receive as compensation therefor by his will a life estate in the house and lot No. 78 Rush street, in the city of Brooklyn, $5,000 in cash and $3,000 in railroad bonds.

Under this agreement the plaintiff remained in the service of the ·deceased until about the middle of April, 1889, about·four years and .a half before the death of Mr. Webb, when she left.

Three weeks before that time there was an interview between the plaintiff and the deceased, which was described by the plaintiff in her testimony upon the trial as follows: " I said, ' Uncle Eck, Mr. Edgecomb called here yesterday morning, and, to my great surprise, asked me to marry him, and I want your advice.' That was about three weeks before I left Mr. Webb. He said, ' Elizabeth, I haven't any advice to give.' He was very angry. Very angry for a moment. Q. How soon after that did you accept Mr. Edgecomb's offer ? A. About 10 days. Q. From the time he proposed, in 10 days you accepted that offer? A. I can't say it was just exactly 10 days — about that time, after I talked with Mr. Webb, and we talked about my going away, if I· did marry, and so on. * * * Q. Did he say anything to you about your leaving before you spoke to him and told him that you contemplated marriage with Mr. Edgecomb ? A. No, sir. "

When subsequently requested to state the whole of the conversation, she continued as follows : " He said to me when I told him, 'Elizabeth, you promised to remain with me.' I said, 'Uncle Eck, so I will remain with you just as long as I live,' and he said, 'Mr. Edgecomb wouldn't want you to wait upon me as you have always done.' I said, 'I have spoken of the matter to Mr. Edgecomb, and without his consent to that, which he freely gives, I would never marry him.' Then I made three proposals, and he said he would consider them.  *  *  *  I said, 'I will remain here with you — Mr. Edgecomb can remain at the Wall House, where he is. Another thing I will do is to take a house, furnish it, and get settled as soon as possible, give you the best rooms in the house and care for you always as I have done, or Mr. Edgecomb and I will come here and live with you and care for you,' and I proposed that while I went on a short wedding trip, my stepmother  *  *  would come and keep house for him.  *  *  *  After considering he gave me three weeks to leave the house ; he said he would give me three weeks to leave the house ; that he would not accept any of these arrangements that I was willing to make."

A witness produced by the plaintiff upon the trial testified to a conversation with Mr. Webb in relation to the foregoing propositions, as follows : " Mr. Webb said to me that his objections to any of those three propositions were that he did not propose to have a married man around ; he wanted the services of an unmarried woman. He also said to me that Mr. Edgecomb would not permit his wife to administer to him in the same manner that she had formerly done, and the manner in which it was necessary for him to be administered to."

Mr. Webb made a will in April, 1883, more than two years after the new arrangement was made between him and the plaintiff, in which he provided for her according to his contract, but he revoked that will by another in August, 1891.

The plaintiff waited until the termination of the period for which she was hired, and now claims to recover as damages the wages she was to be paid under her contract with the deceased. The defendant, on the contrary, insists that the discharge was justifiable and that the reasons therefor were amply sufficient.

The case was tried at the Circuit before a jury. When the plain-

tiff rested, and again at the close of the testimony, the defendant moved to dismiss the complaint, and excepted to the denial of the motion. There was also an exception to the refusal of the court to direct a verdict for the defendant.

The trial-judge left it to the jury as a question of fact to determine whether or not the effect of the marriage of the plaintiff was to render it practically impossible for her to continue to render the same services as she had rendered before. His language was this: "I leave it to you as a question of fact to determine whether or not the effect of the marriage was to render it practically impossible for the plaintiff to continue to render the same services as she had rendered before. As I have said, if you shall find that the effect of the marriage she was about to contract took it out of her power to perform the contract, then she cannot recover at all; if such was not the effect of the marriage, and if you shall find that it was practicable for her to go on and do just what she did before, and that Mr. Edgecomb, her husband, was willing that she should go on and do just as she did before, then Mr. Webb was not in a position to break off the relations until something actually occurred which made it certain that she could not go on. Of course he was under no obligation to make any change in his household to accommodate the husband; he was under no obligation to admit him there, either as the spouse of this lady or as a visitor for any purpose whatever, or to sacrifice one moment of the time which the plaintiff engaged should be devoted to him, in order that she might devote it to her husband, but he was not justified in breaking off the relation if it were practicable that the relation should continue as it had continued, and as it was intended to continue by the contract if she did everything to render such a result possible."

The jury rendered a verdict in favor of the plaintiff for $8,330.

The trial judge submitted six questions to the jury which, with the answers, are as follows:

*First.* Was it agreed, in or about February, 1881, between the plaintiff and Eckford Webb, that she should render services to him then as his housekeeper, and, as a compensation for such services, that he would, in and by his will, give her a life estate in 78 Rush street, Brooklyn, $5,000 in cash and $3,000 in railroad bonds? Yes.

*Second.* Did Eckford Webb dismiss the plaintiff from such service because she became engaged to marry Daniel W. Edgecomb, if that is the right name? I believe it is. Ans. Eckford Webb dismissed the plaintiff because she informed him that Daniel W. Edgecomb had proposed marriage to her.

*Third.* Did the marriage of the plaintiff to Daniel W. Edgecomb make it practically impossible for her to continue to perform such services as she agreed to perform as housekeeper for Eckford Webb? No.

*Fourth.* Did the plaintiff voluntarily leave or abandon the service of Eckford Webb upon entering into her marriage engagement? No.

*Fifth.* Has the plaintiff been paid for such services as she rendered to Eckford Webb? No.

*Sixth.* What was the fair, reasonable value per month of such services as the plaintiff rendered to Eckford Webb? Eighty-five dollars per month.

In relation to the second question, it is to be said that it did not present the question involved in the action. Webb did not dismiss the plaintiff from his service because she became engaged to Edgecomb, but because she intended to marry him. Both the question and answer are, therefore, immaterial.

The third question did not present a material point to the jury. The discharge may have been justifiable, even though it was practically possible for the plaintiff to continue to perform such services as she agreed to perform for Webb. The question was, assuming it to be one of fact, whether the contemplated marriage of the plaintiff furnished a sufficient reason for her discharge. If a servant steals his master's property, we suppose the larceny would constitute a valid legal justification for his discharge, and yet the jury might find it practically possible for him to perform his duties as he had done before.

We have, however, reached the conclusion that the question respecting the right of the deceased to discharge the plaintiff should have been decided as a question of law by the trial court, and that the submission of the question to the jury for determination as one of fact was erroneous. The testimony respecting the discharge was uncontradicted. It was all furnished by the plaintiff, and was not

disputed. The cause of the dismissal is plainly stated. The evidence is free from conflict, and no question of fact was involved; therefore, assuming the question to be one of law, what is its true solution?

The deceased man required the services of a single woman to take charge of his house and to give him her personal attention, and he hired the plaintiff to fill that position and perform those duties. She was a single woman, and he hired her because she was such. The evidence shows that he was pleased with her, and made his will to insure the performance of his contract with her. Finally the plaintiff informed the decedent of her offer of marriage and sought his advice. He was displeased and had no advice to give her. Then she made him three proposals for a modification of their contract, all of which contemplated her marriage, and were based upon that event. He did not accept the propositions because he wanted the services of an unmarried woman, and he knew that Edgecomb would not permit his wife to administer to him as she had theretofore done, and it was necessary for him to have such administration.

Of course Webb was under no obligation to modify his contract with the plaintiff; he had bargained for a single woman to administer to his personal necessities and comforts, and he had a right to the benefit of his bargain. The case is peculiar. The plaintiff was about to change herself from a single woman to a married woman. The change would be radical, and, in the estimation of the deceased, it would prevent the plaintiff from carrying out her contract with him as fully as he had a right to expect and require.

That seems to bring the case within the rule of law stated by an elementary writer as follows: "Yet the legal principle is correct that for habitual negligence or unwarranted absence, or for any such conduct in fact as prevents a mutual agreement from being carried out to the reasonable satisfaction of the employer, the person employed may be dismissed." (1 Schouler's Dom. Rel. [4th ed.] § 462.)

Marriage is not only a contract but an institution; it not only creates rights and imposes obligations but it confers a status.

It may be stated as a general rule that when one fails to perform his part of a contract, or disables or disqualifies himself from performing it, the other party may treat the contract as rescinded.

After mature deliberation we think the marriage of the plaintiff wrought such a change in the plaintiff herself as to disqualify her

from the performance of her contract with the decedent, and he was justified in considering her proposed marriage as a rescission of the contract on her part, and discharging her for that cause.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

BROWN, P. J., concurred; CULLEN, J., dissented.

Judgment reversed and new trial granted, costs to abide event.